UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOZEF GAJEWSKI, <br> WIESLAWA GAJEWSKI, and <br> ROBERT R. GAJEWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC; <br> CODILIS AND ASSOCIATES, P.C.; and <br> NATIONSTAR MORTGAGE, LLC, <br><br> Defendants. | Case No. 14-cv-9230 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, proceeding *pro se*, have brought this action, alleging one federal claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, and fourteen state claims. Defendants, separately, move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) or, in the alternative, move to stay the Complaint, pending resolution of the foreclosure case against Plaintiffs.

### BACKGROUND

The following facts are taken from the Complaint and its exhibits and assumed to be true for purposes of the Motions. In April 2008, Plaintiff Jozef Gajewski obtained a loan and executed a promissory note for $388,000.00. As security for the loan, Jozef and his wife, Plaintiff Wieslawa Gajewski, granted a mortgage on their property located at 6 Hickory Lane, Hawthorne Woods, Illinois, 60047 ("the Property"). (Compl. Exh. 5). Their son, Plaintiff Robert Gajewski, is not a party to the loan, the promissory note, or the mortgage. (Compl. Exhs. 4-5.)

In August 2009, the loan was assigned to a new party, Cenlar Loan Administration & Reporting ("Cenlar"). (Compl. ¶¶ 62, 72.) Plaintiffs contend that Jozef and Wieslawa paid the mortgage payment for August 2009, but Cenlar did not credit them for the payment. (*Id*. ¶¶ 77, 83; Exh. 12.) In November 2009, the loan was assigned to Defendant Ocwen Loan Servicing LLC ("Ocwen"). The August 2009 mortgage payment was still disputed at that time.

Ocwen first initiated a foreclosure proceeding on March 3, 2010. (*Id.* ¶ 129.) Ocwen and Jozef and Wieslawa then agreed to modify the loan, effective May 2010. (*Id.* ¶ 278; Exh. 40.) However, Jozef and Wieslawa repeatedly made monthly payments that differed from Ocwen's monthly account statements. (*Id.* ¶¶ 189-259.) In March 2011, due to disputes regarding their account status, Jozef and Wieslawa ceased making payments to Ocwen. (*Id.* ¶ 261.) Ocwen continued sending notices of default and required Plaintiffs to list the Property for "short sale" on April 4, 2011. (*Id.* ¶¶ 264, 267, 269.)

Beginning on August 5, 2011, Ocwen retained Defendant, the law firm of Codilis and Associates, P.C. ("Codilis"), to assist with the collection attempts. Another foreclosure action was initiated by Ocwen through Codilis on January 13, 2012. That action was dismissed by Codilis on December 7, 2012, after Jozef and Wieslawa submitted a loan modification application. (Compl. ¶¶ 346, 348.)

On January 22, 2013, Ocwen and Codilis filed a foreclosure complaint against Jozef and Wieslawa in state court in Lake County, Illinois, Case No. 2013-CH-273. (*Id.* ¶ 361.) That action is still pending. On May 16, 2013, Ocwen assigned rights to the loan to Defendant Nationstar Mortgage, LLC ("Nationstar"). (Compl. ¶¶ 402, 467, 486.) Nationstar has substituted into the pending foreclosure action for Ocwen. (Compl. ¶ 470.) On

2

December 4, 2014, Jozef moved for leave to file amended counterclaims against Nationstar in the foreclosure action; that motion is still pending.

On November 17, 2014, Jozef and Wieslawa recorded a quit claim deed, transferring the property to themselves and Robert in joint tenancy. (Compl. Exh. 0.)

On November 18, 2014, Plaintiffs filed this lawsuit. The Complaint consists of 105 pages, 633 paragraphs, and 211 exhibits. Plaintiffs' claims relate to the servicing and debt collection of their loan and mortgage. Defendants contend, among other things, that Plaintiffs' sole federal claim for violation of the FDCPA is untimely and that the Court should decline supplemental jurisdiction over Plaintiffs' remaining state law claims. Defendants further contend that Robert lacks standing in this lawsuit.

## LEGAL STANDARD

*12(b)(1) Motion*

A Rule 12(b)(1) motion challenges standing and ripeness. Fed. R. Civ. P. 12(b)(1). Under Article III § 2 of the United States Constitution, federal courts are limited to hearing "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). This case-or-controversy limitation requires "a claim that is ripe and a plaintiff who has standing." *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). These concepts are related but distinct: "Whereas ripeness is concerned with when an action may be brought, standing focuses on who may bring a ripe action." *Id.* (quoting *Pic-A-State Pa. v. Reno*, 76 F.3d 1294, 1298 n. 1 (3rd Cir. 1996) (emphasis in original)). The plaintiff bears the burden of alleging facts sufficient to establish standing and ripeness. *See, e.g.*, *Scanlan v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012). The court may look beyond the complaint's allegations and consider whatever

evidence has been submitted on these issues. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

*12(b)(6) Motion*

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must allege enough facts to support a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

The pleadings of *pro se* litigants are not held to the same stringent standards as pleadings drafted by formally trained lawyers; instead, they must be liberally construed. *See Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) (citing *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988)). Under this standard, a *pro se* complaint "may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson*, 839 F.2d at 378. Despite the deferential standard for *pro se* litigants, the pleadings still

must comply with the procedural rules governing them, and the complaint still must be "otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).[1]

---

[1] Although greater latitude is given to *pro se* plaintiffs, this does not include pleadings that have been prepared by an attorney who has not entered an appearance in court. The practice of "ghost-writing" by an undisclosed attorney "raises serious issues of professional misconduct" and violates Rule 11, which requires attorneys to sign documents submitted to court and personally represent that there are grounds to support the pleadings. *See Chriswell v. Big Score Entm't, LLC*, No. 11 C 00861, 2013 WL 315743, at *4 (N.D. Ill. Jan. 28, 2013); *see also Johnson v. City of Joliet*, No. 04 C 6426, 2007 WL 495258, at *2 (N.D. Ill. Feb. 13, 2007) ("If, as we suspect, a licensed attorney has been ghost-writing Johnson's pleadings, this presents a serious matter of unprofessional conduct. Such conduct would circumvent the requirements of Rule 11 . . . ."). As one district court has observed, "it would be patently unfair for a *pro se* litigant to benefit from the less stringent standard applied to *pro se* litigants if, in fact, she is receiving substantial behind-the-scenes assistance from counsel." *Chriswell*, 2013 WL 315743, at *4. Furthermore, a *pro se* litigant cannot employ the services of a non-attorney to prepare court pleadings, as this constitutes unlicensed practice of law and is punishable as contempt of court in Illinois. *See Thigpen v. Banas*, No. 08 C 4820, 2010 WL 520189, at *2 (N.D. Ill. Feb. 11, 2010).

Accordingly, ghost-written pleadings can result in disciplinary proceedings and sanctions, including ordering the party to disclose the identity of the undisclosed attorney. *See, e.g., Chriswell*, 2013 WL 315743, at *5 (ordering plaintiff to file a sworn affidavit disclosing whether she has received legal assistance from an attorney and revealing the identity of the person who has been assisting her with her briefs); *Thigpen*, 2010 WL 520189, at *2 (striking second amended complaint where *pro se* plaintiff admitted someone else had prepared it).

Although Plaintiffs remind the Court of the advantage afforded *pro se* litigants (*see, e.g.,* Dkt. No. 40, p. 2), the Court notes that Plaintiffs' Response briefs are remarkably well-written with sophisticated legal analysis, which suggests that they were prepared by an undisclosed attorney or with attorney assistance. An example paragraph from page 3 of Plaintiffs' Response to Ocwen's Motion reads as follows: "U.S. Supreme Court decisions adopted a bright line rule for determining whether a particular statute of limitations creates a jurisdictional or a non-jurisdictional requirement. *See Henderson v. Shinseki*, U.S., 131 S. Ct. 1197, 1202 (2011). Specifically, Congress must clearly state that a given statute of limitations is jurisdictional. When it comes to FDCPA, even the Seventh Circuit has held that limitation period is not jurisdictional. *See Marshall-Mosby v. Corporate Receivables, Inc*., 205 F.3d 323, 327 (7th. Cir. 2000)." (Dkt. No. 40, p. 3).

A complaint can also fail to state a claim under Rule 12(b)(6) "[i]f the allegations of the complaint 'show that relief is barred by the applicable statute of limitations.'" *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802 (7th Cir. 2008) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). While a complaint is not required to anticipate affirmative defenses and address them, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (quoting *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006)).

## ANALYSIS

### *Plaintiffs' FDCPA Claim*

The FDCPA provides that any claims to enforce liability must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Defendants contend that Plaintiffs' sole federal claim is barred by the FDCPA's one-year statute of limitations. They point out that, by the Complaint's allegations, the foreclosure action was initiated in

---

Indeed, although Plaintiffs' Complaint is a rambling, 633-paragraph-long document that recounts in great detail the history among the parties, it is also replete with legal conclusions and legal terms of art, which also suggests input by an attorney.

It is unlikely, to say the least, that these filings were composed by someone without an education in the law. If assistance was afforded by someone other than a licensed attorney, there would appear to be an issue of the unauthorized practice of law.

January 2013, which was more than one year before Plaintiffs filed their Complaint on November 18, 2014.

Although the Seventh Circuit has not yet addressed the issue directly, two other circuit courts have held that the statute of limitations begins to run when the alleged wrongful litigation begins. *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002). Likewise, several district courts in this circuit have held that the clock for FDCPA claims starts with the filing of the allegedly wrongful lawsuit. *See, e.g., Padilla v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 C 7650, 2015 WL 513277, at *2 (N.D. Ill. Feb. 5, 2015); *Mako v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 cv 9600, 2015 U.S. Dist. LEXIS 6829, at *3 (N.D. Ill. Jan. 20, 2015); *Hammer v. Residential Credit Solutions, Inc.*, No 13 cv 6397, 2014 WL 4477948 at *10 (N.D. Ill. Sept. 13, 2014); *Lockhart v. HSBC Fin. Corp.*, No. 13 cv 9323, 2014 WL 3811002 at *9 (N.D. Ill. Aug. 1, 2014); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 825 (N.D. Ill. May 24, 2013).

As reflected in Count XIV, Plaintiffs enumerate a laundry list of ways that Defendants allegedly violated the FDCPA with respect to their loan (the "debt" at issue, for purposes of the FDCPA). Defendants allegedly violated the FDCPA when they used unfair and deceptive means to collect on the loan, misrepresented the amount and legal status of the loan, communicated to credit rating agencies false information about the loan, and failed to properly investigate and validate the loan. Plaintiffs do not specify which communications or actions of Defendants

violate the various provisions of the FDCPA. Plaintiffs' factual allegations about Defendants' misdeeds culminate with the filing of the foreclosure action in January 2013.[2]

The Court agrees with the district courts in this circuit and the other circuit courts that have held the statute of limitations for a FDCPA claim starts with the filing of the allegedly unlawful litigation. Contrary to Plaintiffs' argument, Defendants "continuously litigating" the foreclosure did not toll the statute of limitations for the FDCPA injury. Specifically, Plaintiffs contend that an April 2, 2014 motion by Codilis to substitute Nationstar as a party plaintiff violated the FDCPA. Even if this motion could be interpreted as a violation of the FDCPA – although a fair reading of the allegations about this motion does not support such a violation – this motion is part of the foreclosure litigation and does not restart the clock on the limitations period. The Seventh Circuit has held that a statute of limitations begins to run upon injury "and is not tolled by subsequent injuries." *Limestone*, 520 F.3d at 801. Therefore, to the extent that Plaintiffs' FDCPA claim is based on the January 2013 foreclosure action, it is time-barred.[3]

Furthermore, to the extent that Plaintiffs' FDCPA claim arises from other communications with Defendants that predate November 18, 2013 (one year before the filing of the lawsuit), those communications also are time-barred. Ocwen points out that the last

---

[2] In their Response to Nationstar's Motion, Plaintiffs attempt to bolster their FDCPA claim with pages devoted to Nationstar's purported "deceptive litigation tactics" and ask the Court to "take Judicial Notice of the concurrent State Court proceeding." (Pls' Resp. in Opp. to Nationstar's Mot., at 7-10.) To the extent that Plaintiffs are asking this Court to review proceedings still pending in state court, the Court declines Plaintiffs' request as improper.

[3] The parties disagree whether Rule 12(b)(1) or 12(b)(6) is the proper vehicle to dismiss a complaint pursuant to the statute of limitations, although Defendants urge that the Complaint can be dismissed under either rule for untimeliness. Rule 12(b)(6) is proper in this case because Plaintiffs have pleaded themselves out of the limitations period by their own allegations. *See Cancer Found., Inc.*, 559 F.3d at 674-75.

8

communication from Ocwen to Plaintiffs that is referred to in the Complaint is a June 4, 2013 letter. (Compl. ¶ 416.) Even if this letter, which informed Jozef that he was responsible for the loan payments and that the servicing for the loan had been transferred to Nationstar, could be construed as a violation of Section 1692g of the FDCPA, it also falls outside of the limitation period. Likewise, Nationstar's purportedly insufficient response to a debt validation letter, which was sent on July 16, 2013, also falls outside of the statute of limitations. (Compl. Exh. 179.)

Plaintiffs respond that they have attached to the Complaint, as Exhibit 211, a letter from Ocwen to Robert that is dated September 24, 2014.[4] When evaluating correspondence regarding the status and collection of a debt, the correspondence should be viewed through the eyes of the "unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (citation omitted). If a statement would not mislead the unsophisticated consumer who has basic knowledge of the financial world and can make basic inferences and draw logical conclusions, then it does not violate the FDCPA, "even if it is false in some technical sense." *Id.*

---

[4] Although Plaintiffs remind the Court of the advantage afforded *pro se* litigants (*see, e.g.,* Dkt. No. 40, p. 2), the Court notes that Plaintiffs' Response briefs are remarkably well-written with sophisticated legal analysis, which suggests that they were prepared by an undisclosed attorney or with attorney assistance. An example paragraph from page 3 of Plaintiffs' Response to Ocwen's Motion reads as follows: "U.S. Supreme Court decisions adopted a bright line rule for determining whether a particular statute of limitations creates a jurisdictional or a non-jurisdictional requirement. *See Henderson v. Shinseki*, U.S., 131 S. Ct. 1197, 1202 (2011). Specifically, Congress must clearly state that a given statute of limitations is jurisdictional. When it comes to FDCPA, even the Seventh Circuit has held that limitation period is not jurisdictional. *See Marshall-Mosby v. Corporate Receivables, Inc*., 205 F.3d 323, 327 (7th. Cir. 2000)." (Dkt. No. 40, p. 3).

Indeed, although Plaintiffs' Complaint is a rambling, 633-paragraph-long document that recounts in great detail the history among the parties, it is also replete with legal conclusions and legal terms of art, which also suggests input by an attorney.

at 645-46; *see also Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003) and *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000).

Ocwen's September 24, 2014 letter does not plausibly suggest a violation of the FDCPA, even under the most liberal construction. Rather, the letter reflects that Robert (who is not a party to the loan or the mortgage) expressed dissatisfaction with customer service from Ocwen. In the letter, Ocwen apologizes for Robert's dissatisfaction, recounts a history of the loan, asks for check information to research the August 2009 payment, and repeats that servicing for the loan has been transferred to Nationstar. By their own allegations, Plaintiffs knew that Nationstar was servicing the loan by the date of this letter. Thus, even though this letter occurred within the statute of limitations, it does not plausibly state a claim against Ocwen under the FDCPA.

*Plaintiff Robert Gajewski*

Defendants further contend that Robert does not have standing to assert claims against them. To establish standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wisconsin Right to Life State PAC v. Barland*, 664 F.3d 139, 146-47 (7th Cir. 2011) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Injury in fact is more than an injury to a cognizable interest – it requires that the party seeking relief be itself among the injured. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992).

According to the Complaint, Robert recorded a quitclaim deed conveying the property to himself and his parents as joint tenants on November 17, 2014, one day prior to the filing of

this Complaint. (Compl. Exh. 0.) Defendants contend Robert did not suffer injuries traceable to the alleged unfair debt collection practices and related state law claims.

Robert has no legal interest in the foreclosure proceedings because he is not a party to the mortgage. Plaintiffs do not allege Codilis knew of his existence prior to the foreclosure suit or that the Defendants knew Robert was an occupant of the Property. Additionally, while Robert aided his parents in their communication with Defendants, no allegation is made that Defendants attempted to collect the debt from Robert. Rather, Robert's only connection is the purported quit claim deed, which was filed one day before the Complaint and subsequent to all the relevant events alleged in the Complaint.

Plaintiffs have not sufficiently established that Robert suffered an injury in fact that supports his right to be a party to this lawsuit. Robert is consequently dismissed, with prejudice, as a party to the FDCPA claim.

*Supplemental Jurisdiction*

Plaintiffs' remaining claims are state-law claims. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc*., 657 F.3d 496, 505 (7th Cir. 2011) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999)). Accordingly, as Plaintiffs' only federal claim has been dismissed, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state-law claims.

## CONCLUSION

For the reasons discussed above, Defendants' Motions to Dismiss [14, 18, 37] are granted. Since it is clear that future amendments to Plaintiffs' FDCPA claim would be futile, dismissal is with prejudice.

Date: June 25, 2015

JOHN W. DARRAH
United States District Court Judge